IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICOLE HARRIS and PAULA ASHLEY,

      Plaintiffs,

v.                                               Case No. 2:22-cv-454 KRS/GBW

THE CITY OF TEXICO, *a New Mexico incorporated municipality*;
DOUGLAS BOWMAN, *Chief of Police for the City of Texico*;
CHRISTINA VANNATTA, *as Personal Representative of the
Estate of CHARLES BRYAN VANNATTA, deceased,
formerly a police officer with the City of Texico*;
THE BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF CURRY;
SONNY WILCOX, *a deputy sheriff employed
by the County of Curry*; and
BRIAN STOVER, *Chief Deputy District Attorney
for the Ninth Judicial District Attorney*,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on the Motion to Dismiss and for Qualified

Immunity filed by Defendants The City of Texico, Douglas Bowman, and Christina Vannatta,

Personal Representative of the Estate of Charles Bryan Vannatta, deceased ("City Defendants"

or "Defendants"), filed July 13, 2022.  (Doc. 16).  Plaintiffs filed a response to the Motion to

Dismiss on August 31, 2022, and the City Defendants filed a reply on October 21, 2022.  (Docs.

27 and 34).  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct

dispositive proceedings in this matter and to enter a final judgment.  (Docs. 7, 10-14).  Having

considered the parties' briefing, record of the case, and relevant law, the Court grants in part and

denies in part the City Defendants' Motion to Dismiss.

I.     **Background**

      For the purpose of ruling on Defendants' Motion to Dismiss, the Court assumes that the following facts, taken from Plaintiffs' complaint, are true.  *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) ("In reviewing a motion to dismiss, [the Court] accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff.").  Plaintiffs allege that on January 23, 2020, Plaintiff Harris called 911 and, during that call, her cell phone battery died and the call was disconnected.  (Doc. 1-5) at 6 (Plaintiffs' Second Amended Complaint).  Plaintiff Harris was calling to report that a witness in a civil matter she was involved in was in her parking lot and Plaintiff Harris was concerned about it.  When the call dropped, Plaintiff Harris decided not to pursue the matter further.  *Id.*

      "About one (1) or two (2) hours" later, Defendant Vannatta went to Plaintiff Harris's apartment and looked into the windows.  Plaintiff Ashley, who is Plaintiff Harris's mother, saw Defendant Vannatta looking through the windows of Plaintiff Harris's apartment and "banging on the windows with his flashlight so hard that Ashley could see the windows vibrating and thought they were going to break."  *Id.* at 7.  Plaintiff Ashley called the Curry County Sheriff's Department and asked for assistance.  Defendants Bowman and Wilcox arrived to assist Defendant Vannatta.  Plaintiff Ashley states that she argued with Defendant Bowman, and Defendant Bowman told her "if you bring your black ass out here again, I'm going to arrest you."  *Id.*  Plaintiff Ashley further states that she "told Bowman and Vannatta that Harris had just left Ashley's apartment and that Harris was OK."  *Id.*  Plaintiff Ashley "was keeping Harris' dog for her and when Ashley opened the door to her apartment to speak with the officers, the dog ran out."  *Id.*  Defendants Bowman and Vannatta then asked Plaintiff Ashley for the key to Plaintiff Harris's apartment and, when Plaintiff Ashley told them she did not have a key, Defendant

2

Bowman "then turned to Vannatta and said to 'kick the fucking door.'"  Plaintiffs allege that

Defendant Vannatta then contacted Chief Deputy District Attorney Stover, "who advised

Vannatta to breach Harris' door based on the justification of a 'welfare check.'"  *Id.*

Defendant Vannatta breached the door to Plaintiff Harris's apartment and Defendants

Vannatta and Bowman entered the apartment with guns drawn.  *Id.* at 8.  Plaintiff Harris "was

asleep in the apartment bedroom," and was charged with "improper use of 911."  *Id.*  Plaintiff

Harris alleges that the charge for improper use of 911 resulted in the revocation of her conditions

of release in another case and she was held without bond in the Curry County Detention Center

for eight days.  *Id.* at 9.  Plaintiff Harris now is afraid of the police, and has continuing

nightmares and PTSD as a result of this incident.  *Id.* at 9-10.

In what Plaintiffs refer to as the "Second Incident," after finding Plaintiff Harris in her

apartment, Defendant Bowman "then again approached Ashley as she was standing outside her

door."  *Id.* at 8.  Plaintiffs state that "Wilcox recites in his incident report: 'Nichole's mother

attempted to run back into her apartment and slam the door.  Chief Bowman shouldered his way

into Nichole's mother's apartment.'"  *Id.* at 8.  Plaintiffs refer to an affidavit from an officer who

worked with and for Defendant Bowman for about seventeen years, in which the officer recites

multiple incidents of racism by Defendant Bowman.  *Id.* at 8-9.  Plaintiffs state that "[b]ecause

Harris and Ashley are both black, and because Bowman is demonstrably what most people

would likely refer to as a 'racist,' it appears that this invasion of Harris's and Ashley's privacy

and violation of their rights … were motivated in part or whole by racial hatred."  *Id.* at 9.

Plaintiffs bring the following claims in their Complaint:

> (1) Deprivation of Plaintiff Harris's Fourth Amendment rights to
>     be free from unreasonable searches and seizures, against
>     Defendants Stover, Bowman, Vannatta, Wilcox, and City of

Texico, and conspiracy by Defendants Bowman and Vannatta to deprive Plaintiff Harris of her constitutional rights;

(2) Deprivation of Plaintiff Harris's equal protection rights under the Fourteenth Amendment, against Defendants Bowman and City of Texico for respondeat superior;

(3) Deprivation of Plaintiff Harris's state constitutional rights to be free from unreasonable searches and seizures, against all Defendants;

(4) Deprivation of Plaintiff Harris's state equal protection rights, against Defendants Bowman and City of Texico for respondeat superior;

(5) Deprivation of Plaintiff Ashley's Fourth Amendment rights to be free from unreasonable searches and seizures, against Defendants Bowman and City of Texico;

(6) Deprivation of Plaintiff Ashley's equal protection rights under the Fourteenth Amendment, against Defendants Bowman and City of Texico for respondeat superior;

(7) Deprivation of Plaintiff Ashley's state constitutional rights to be free from unreasonable searches and seizures, against Defendants Bowman and City of Texico;

(8) Deprivation of Plaintiff Harris's state equal protection rights against, Defendants Bowman and City of Texico for respondeat superior; and

(9) Deprivation of Plaintiffs' rights under the New Mexico Tort Claims Act, against Defendants City of Texico, Curry County, Bowman, Vannatta, and Wilcox.

*Id.* at 10-17.  Plaintiff sues Defendants Bowman and Vannatta in their official and individual capacities, and sues Defendants Stover and Wilcox in their individual capacities only.  *Id.* at 2-3. Plaintiffs voluntarily dismissed their claims against Defendants Wilcox and the Board of County Commissioners of the County of Curry, and those claims have been dismissed with prejudice. *See* (Doc. 29).

4

The City Defendants (Defendants Bowman, Vannatta, and the City of Texico) move to dismiss all of Plaintiffs' claims against them and for qualified immunity.  They raise the following arguments: (1) Plaintiffs' state law claims are time-barred by the statute of limitations; (2) Defendants Bowman and Vannatta are entitled to qualified immunity for Plaintiffs' federal claims against them in their individual capacities because (a) their warrantless entry into Plaintiff Harris's apartment was a lawful community caretaker exercise that falls within the exigent circumstances exception, (b) Plaintiffs' Complaint is deficient and fails to state a plausible claim for relief as to Plaintiff Ashley's unreasonable search and seizure claim, and (c) Plaintiffs fail to state a claim for relief for their equal protection claims; (3) Plaintiffs' claims against Defendants Bowman and Vannatta in their official capacities are duplicative as to their claims against the City of Texico; and (4) Plaintiffs fail to state a claim against the City of Texico for municipal liability based on custom or policy.  (Doc. 16) at 5-13.

In response, Plaintiffs concede their state law claims (Counts 3, 4, 7, 8, and 9) and their official capacity claims against Defendants Bowman and Vannatta, and agree to dismiss those claims with prejudice.  (Doc. 27) at 5, 23.  Plaintiffs oppose the Motion to Dismiss as to the remaining federal claims.  They dispute that there were exigent circumstances justifying entry into Plaintiff Harris's apartment, and argue that Defendants Bowman and Vannatta are not entitled to qualified immunity for that claim.  *Id.* at 5-19.  Plaintiffs further contend they have stated sufficient facts as to the warrantless entry into Plaintiff Ashley's home and for Plaintiffs' equal protection claims.  *Id.* at 20-23.  Finally, Plaintiffs oppose dismissal of their federal claims against the City of Texico and argue the City was on notice that Defendant Bowman had a history of lawsuits alleging misconduct based on racism, which constitutes a policy or custom that was acceptable to the City.  *Id.* at 23.

5

In their reply, the City Defendants maintain that Defendants Bowman and Vannatta are entitled to qualified immunity for entering Plaintiff Harris's apartment because they had an objectively reasonable basis for believing there was a threat to her physical safety, and the level of intrusion was reasonable for a welfare check. (Doc. 34) at 3. Defendants contend that Plaintiff Ashley's Fourth Amendment claim fails because she does not allege that Defendant Bowman conducted a search of her apartment or seized anything, only that he entered the apartment. *Id.* at 4. Defendants also argue that Plaintiffs' equal protection claims fail because they do not allege they were treated differently than similarly situated individuals who are not members of a protected class, and that Plaintiffs fail to sufficiently allege the City of Texico had a policy or custom that caused a constitutional injury. *Id.* at 5-6.

## II.   <u>Legal Standard</u>

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Additionally, the court must view a plaintiff's allegations in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013)

6

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield*, 826 F.3d at 1255.  The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct," otherwise, the plaintiff has not shown entitlement to relief.  *Id.* at 679.

## B. Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is available to state officials sued in their individual capacities.  *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).  When an individual defendant raises the qualified immunity defense, the burden shifts to the plaintiff to meet a strict two-part test.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The plaintiff must show that: (1) the officer violated a constitutional or statutory right, and (2) the right was clearly established when the alleged violation occurred.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).  A court may address these prongs in either order, but a

plaintiff must satisfy both to avoid qualified immunity.  *Pearson*, 555 U.S. at 236; Olsen, 312 F.3d at 1304.

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [the Court] will also review this defense on a motion to dismiss."  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Id.* (citations omitted).  Accordingly, "[a]t the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citations omitted).  The complaint need not include "all the factual allegations necessary to sustain a conclusion that [a] defendant violated clearly established law."  *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citation omitted).  Instead, the operative question is whether the plaintiff has "ple[d] factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights."  *Iqbal*, 556 U.S. at 666.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains."  *Moore*, 438 F.3d at 1042 (citation omitted).  The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully.  *D.C. v. Wesby*, 138 S. Ct. 577, 591

(2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015).  While the plaintiff "does not need

to find a case with an identical factual situation," the correspondence between settled law and the

present case must be "substantial."  *Moore*, 438 F.3d at 1042; *Plumhoff v. Rickard*, 572 U.S. 765,

780 (2014) (explaining that if no controlling authority is on point, the plaintiff must identify "a

robust consensus of cases of persuasive authority") (citation omitted).  In other words, the action

at issue need not have been previously declared unlawful, but its unlawfulness must be evident in

light of preexisting law.  *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).  Unlawfulness

is generally demonstrated "when there is controlling authority on point or when the clearly

established weight of authority from other courts supports plaintiff's interpretation of the law."

*Id.* at 1069-70 (citation omitted).

## III.   <u>Analysis</u>

### A. **Entry into Plaintiff Harris's Home (Count 1)**

In Count 1, Plaintiff Harris claims her Fourth Amendment right to be free from

unreasonable searches and seizures was violated by Defendants Bowman and Vannatta breaking

into her home without a warrant, consent, exigent circumstances, or other emergency, and that

Defendants Bowman and Vannatta are liable for conspiracy to deprive Plaintiff Harris of her

constitutional rights.  (Doc. 1-5) at 10.  Defendants Bowman and Vannatta argue they are entitled

to qualified immunity as to this claim because entry into Plaintiff Harris's apartment "was a

lawful community caretaker exercise that falls within the exigent circumstances exception."

(Doc. 16) at 8.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a

home without a warrant are presumptively unreasonable*." Payton v. New York*, 445 U.S. 573,

586 (1980) (internal quotation marks omitted); *United States v. Martinez*, 643 F.3d 1292, 1295

9

(10th Cir. 2011).  "It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'"  *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971); *see also Martinez*, 643 F.3d at 1295-96 ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (citing *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978))).  "[E]xceptions to the warrant requirement are few in number and carefully delineated, and … the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."  *Welsh v. Wisconsin*, 466 U.S. 740, 749-50; *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011) ("The burden is on the government to demonstrate the existence of exigent circumstances.").

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.  The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citation omitted).  Thus, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  *Id.* (citing *Mincey*, 437 U.S. at 392).  The Tenth Circuit has held that exigent circumstances "exist when: (1) the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others, and (2) 'the manner and scope of the search is reasonable.'"  *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007) (quoting *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006)).  "We evaluate whether a reasonable belief existed based on the

realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *United States v. Gambino-Zavala*, 539 F.3d 1221, 1225 (10th Cir. 2008) (citation omitted). "Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." *United States v. Porter*, 594 F.3d 1251, 1258 (10th Cir. 2010). "An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." *Brigham City*, 547 U.S. at 404 (citation omitted). "The officer's subjective motivation is irrelevant." *Id.*

Here, Defendants Bowman and Vannatta assert there were exigent circumstances to justify their entry into Plaintiff Harris's apartment because they were responding to an emergency 911 call Plaintiff Harris had placed which was inexplicably disconnected, and Plaintiff Harris did not respond when they attempted to make contact with her at her apartment by knocking on her door and windows. (Doc. 16) at 9. They contend these facts "provided Bowman and Vannatta with a reasonable basis to conclude that harm could befall Harris if they did not enter the residence." *Id.*

Defendants rely on *United States v. Najar*, in which the Tenth Circuit considered the extent of the exigent circumstances exception when responding to a 911 call. 451 F.3d 710 (10th Cir. 2006). In *Najar*, a police dispatcher received a 911 call where the caller did not speak and then disconnected the call. The dispatcher made several attempts to reach the 911 caller, and each time the call was answered but quickly disconnected. *Id.* at 711. Officers were dispatched to investigate and upon arriving at a mobile home, they knocked on the door and announced their presence and purpose. A person could be seen and heard inside the residence but would not respond to the officers. Eventually, Mr. Najar came to the door, denied making a 911 call, and

11

said no other person was at the home.  The officers entered the home over Mr. Najar's objection and found an uninjured woman and observed a shotgun near the entry.  Mr. Najar was charged with being a felon in possession of a firearm and filed a motion to suppress the shotgun evidence, which was denied by the district court.  On appeal, the Tenth Circuit affirmed the district court, reasoning that repeated calls from the 911 dispatcher to the number that placed the initial 911 call resulting in a person answering the call but not speaking, along with the officers' observance of a person moving in the home but not responding to the officer's knocks, presented a reasonable justification for the officers' entry into the home for the purpose of providing emergency aid.  *Id.* at 719-20.  While the officers were delayed thirty minutes between the time they arrived and the time they entered the home, the Tenth Circuit found that this delay was reasonable because it "was due to the officers' repeated and increasingly vigorous attempts to make contact with the person they could see inside."  *Id.* at 719.  Indeed, the Tenth Circuit praised the officers' "restraint and circumspection" because, "[t]o their credit, they did not simply batter down the door."  *Id.*

The facts in *Najar* are distinguishable from this case in several respects.  For example, the 911 call here was disconnected because Plaintiff Harris's cell phone battery died and there are no allegations that this call led to multiple return calls that were answered and then disconnected.  To find exigent circumstances, the officers must have had an objectively reasonable basis to believe there was an immediate need to protect the lives or safety of themselves or others.  A single disconnected 911 call, without any information given by the caller or indication the caller was at the phone but could not speak, like in *Najar*, does not provide this basis.  The Tenth Circuit emphasized in *Najar* that finding exigent circumstances in that case "is not to say that a response to a 911 call will always justify a warrantless entry upon

the arrival of law enforcement," and that exigent circumstances were not just based on the officers' awareness that dispatch had been unable to make contact with the caller. *Id.* at 720, n.7. Instead, the appellate court states: "Even more alarming, someone was answering the phone but immediately placing it back on the receiver. … A reasonable person could well be concerned that someone was trying to prevent communication with safety officials, not merely avoid it." *Id.* at 720 (citing *United States v. Richardson*, 208 F.3d 626, 631 (7th Cir. 2000) ("[W]e do not exclude the possibility of a case in which it would be objectively unreasonable for a police officer to rely on a 911 call.")).

In addition, the officers here did not respond to Plaintiff Harris's 911 call for "one to two hours." This delay further indicates a lack of exigent circumstances, and far exceeds the thirty-minute delay in *Najar* that was deemed reasonable because the officers spent that time trying to make contact with the person inside the home. Indeed, in *Najar* the Tenth Circuit commended the officers' "restraint and circumspection" in making "repeated and increasingly vigorous attempts" to make contact with the person inside the residence instead of breaking through the door. *Id.* at 719. It is also important that Plaintiff's Harris's mother, Plaintiff Ashley, told the officers that Plaintiff Harris was ok and had just been at Plaintiff Ashley's apartment. While the officers may have been justified in continuing to attempt to make contact with Plaintiff Harris by knocking on her door, the *Najar* holding does not support a finding of exigent circumstances for breaking through the door.

Plaintiffs rely on *United States v. McInerny*, to demonstrate it was clearly established that entry into Plaintiff Harris's apartment was a violation of the Fourth Amendment. 792 F.3d 1224 (10th Cir. 2015); (Doc. 27) at 8-14, 18-19. In that case, an officer went to Ms. McInerny's home to serve her with a summons and found two open front windows, another open window with trim

hanging from it, an open screen door, and the front door opened about six inches.  792 F.3d at
1227.  The garage door was also open and belongings were strewn about inside.  The officer
called for another officer and, about 26 minutes after the first officer arrived, the two officers
went to the front porch, knocked, and announced their presence several times.  *Id.* at 1228.  The
officers then entered the residence and found Ms. McInerny asleep in bed, unable to hear the
officers because she had a noisy air conditioner running close to her bed.

In considering whether the officers violated Ms. McInerny's Fourth Amendment rights,
the Tenth Circuit weighed the officers' argument that "a reasonable officer could have believed
there was a need to assure the safety of an individual in the residence."  *Id.* at 1232.  The Tenth
Circuit rejected the argument, finding the facts did not establish "objectively reasonable grounds
of an emergency, i.e. an *immediate need* to protect the officers' lives or others from serious
injury or threatened injury."  *Id.* at 1233 (internal quotation omitted) (emphasis in original).  The
appellate court emphasized that the officers "did not hear or witness any disturbance within Ms.
McInerny's house," "did not overhear any commotion," and did not "observe any altercation
occurring through the open windows or door."  *Id.* at 1233-34.  In short, "[t]hey witnessed no
activity in the home whatsoever.  And there was no evidence that anyone was inside Ms.
McInerny's home, much less a person in need of immediate, emergency assistance."  *Id.* at 1234.
The Court further noted that the officers had no information that Ms. McInerny was
incapacitated in any way, and they "offered nothing, beyond innuendo and speculation to
establish that anyone inside of Ms. McInerny's house was in need of immediate aid at that time."
*Id.* at 1235 (quotation omitted).

Having found a constitutional violation, the Tenth Circuit next considered whether the
law was clearly established at the time of the entry into Ms. McInerny's house.  *Id.* at 1237

("Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.") (citing *Mascorro*, 656 F.3d at 1207-08). The Tenth Circuit emphasized "that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition," and "it is not enough to simply assert that the right to be free from warrantless searches of one's home unless … there are exigent circumstances was clearly established." *Id.* (citations omitted). Instead, the Court considered whether it was clearly established that the circumstances the officers confronted constituted exigent circumstances. *Id.* (explaining that "officials can still be on notice that their conduct violates established law even in novel factual circumstances," especially "in this context, where the analysis requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case") (citations omitted). Accordingly, the Tenth Circuit explained that it was clearly established as of the date of the incident "that exigent circumstances must involve an urgent law enforcement need," and "cases in which we have concluded that exigent circumstances justified a warrantless entry all involved facts and circumstances supporting an officer's reasonable belief that someone inside a home was in immediate danger." *Id.* (citing *Cortez*, 478 F.3d at 1124). Because "[t]hese types of emergency situations are completely missing from this case," the officer "had fair notice that his conduct in entering Ms. McInerney's house without a warrant was unlawful," and "based on the existing case law at the time of [the officer's] warrantless entry—both those cases finding exigent circumstances and those holding such circumstances were not present—it was clearly established that the circumstances he confronted did not constitute exigent circumstances." *Id.* at 1238.

The Court similarly finds that the facts in this case do not demonstrate an "urgent law enforcement need" and do not support "an officer's reasonable belief that someone inside a home was in immediate danger." *Id.* at 1237. The officers delayed one to two hours in reaching Ms. Harris's apartment, they did not have information from the 911 dispatcher indicating an emergency situation, and at Ms. Harris's apartment they did not find reasons to think that anyone was in immediate danger. In a similar case in this district, the court considered whether there were sufficient exigent circumstances to justify a warrantless entry into a home after a dispatcher received a 911 call where no one was on the line and the dispatcher only heard static when she returned the call. *United States v. Martinez*, 686 F.Supp.2d 1161 (D.N.M. 2009). The responding officers found the gate to the property closed but found another opening onto the property. They repeatedly knocked and announced their presence, but received no answer and found no signs of forced entry or of anyone at the property. *Id.* at 1170. The officers entered the house through an unlocked door on the second-story balcony, where they found drugs and child pornography. *Id.* at 1171-75. In considering whether there were exigent circumstances to justify the warrantless entry, the court found that the "static open-line 911 call" was not enough to justify the officers' entry because "[t]here are too many other explanations for a telephone call to a 911 dispatcher in which the caller does not speak—accident, prank, electrical anomaly, etc.— to justify holding that a police officer may enter a person's home if the 911 dispatcher receives any call, no matter the surrounding circumstances." *Id.* at 1191 (citing *Najar*, 451 F.3d at 720 n.7). The Court agrees with the reasoning in *Martinez*, and finds that the dropped 911 call was not enough to create exigent circumstances for the officers' entry to Ms. Harris's apartment.

While Defendants mention in their Motion to Dismiss that "Vannatta consulted with the Chief Deputy District Attorney Stover who advised officers to perform a welfare check on

16

Harris," they do not provide any support that such advice can establish exigent circumstances. The Tenth Circuit has explained that a defendant may be entitled to immunity from suit if he can demonstrate that "extraordinary circumstances" intervened that "so prevented him from knowing that his actions were unconstitutional that he should not be imputed with knowledge of an admittedly clearly established right," such as when a defendant relied on the advice of counsel. *Hollingsworth v. Hill*, 110 F.3d 733, 740-41 (10th Cir.1997) (citations omitted) ("Although reliance upon counsel is not itself an extraordinary circumstance, it is a vital ingredient in cases where we have found extraordinary circumstances to exist.").  The Tenth Circuit has identified four factors that, when applied on a case-by-case basis, help discern when such extraordinary circumstances exist in the context of reliance on counsel: (i) how unequivocal and specifically tailored to the particular facts giving rise to the controversy, the advice was; (ii) whether complete information had been provided to the advising attorney; (iii) the prominence and competence of the attorney; and (iv) how soon after the advice was received the disputed action was taken.  *Id.*  Defendants do not raise the extraordinary-circumstances exception and do not argue that any of the four factors apply to this case.  "The police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests" because "exceptions to the warrant requirement are few in number and carefully delineated." *Welsh*, 466 U.S. at 749-50; *Mascorro*, 656 F.3d at 1205 ("The burden is on the government to demonstrate the existence of exigent circumstances.").  Defendants fail to carry this burden with their conclusory argument regarding Defendant Stover.

For the reasons stated above, the Court concludes that Defendant Bowman's and Defendant Vannatta's entry into Ms. Harris's apartment was unlawful.[1]  In addition, based on existing case law at the time of the warrantless entry—both those cases finding exigent circumstances and those holding such circumstances were not present—the Court concludes that it was clearly established that the circumstances confronted by Defendants Bowman and Vannatta did not constitute exigent circumstances justifying their entry into Ms. Harris's apartment.  The Court denies the Motion to Dismiss this claim against Defendants Bowman and Vannatta.[2]

## B.  Entry Into Plaintiff Ashley's Home (Count 5)

Next, Defendant Bowman moves to dismiss Plaintiff Ashley's claim that he violated her Fourth Amendment rights by entering her home.  He argues that "Plaintiffs' Complaint is deficient and fails to state a claim upon which relief may be granted" because the Complaint "relies on a statement purportedly contained in Defendant Wilcox's incident report providing that Chief Bowman shouldered his way into Ashley's apartment."  (Doc. 16) at 10.  Defendant Bowman further contends the Complaint "contains no facts that constitute recklessness or conduct that 'shocks the conscience,'" and does not "contain factual allegations sufficient to raise a right to relief above the speculative level."  *Id.*

---

[1] Because the Court has concluded that there were no exigent circumstances justifying the officers' warrantless entry, the Court need not consider whether the manner and scope of the search was reasonable.  *See Martinez*, 686 F. Supp. 2d at 1199 ("[Because the Court has concluded that the necessary reasonable belief did not justify [the officers'] investigative sweep, the Court need not decide whether he scope of the search was excessive.").

[2] The Court does not address the conspiracy claim in Count One because Defendants do not raise it in their Motion to Dismiss.

Plaintiffs allege that, after finding Plaintiff Harris in her apartment and charging her for improper use of 911, Defendant Bowman "then again approached Ashley as she was standing outside her door." (Doc. 1-5) at 8. Plaintiffs state: "Wilcox writes in his incident report: 'Nichole's mother attempted to run back into her apartment and slam the door. Chief Bowman shouldered his way into Nichole's mother's apartment.'" *Id.* Based on these facts, Plaintiff Ashley claims that Defendant Bowman violated her Fourth Amendment rights by entering her home without a warrant, without consent, and without exigent circumstances or other emergency, and that because his actions constitute recklessness or otherwise shock the conscience, Plaintiff Ashley will be asking for punitive damages. *Id.* at 14.

As explained above, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable*." Payton*, 445 U.S. at 586 (1980) (citation omitted); *see also Martinez*, 643 F.3d at 1295-96 ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."). Defendant Bowman argues that this claim fails because Plaintiffs rely on a statement made in Defendant Wilcox's incident report. (Doc. 16) at 10. The Court disagrees. Plaintiffs clearly allege in Count 5 that Defendant Bowman entered Plaintiff Ashley's home without a warrant, consent, or exigent circumstances. *See* (Doc. 1-5) at 13-14. Plaintiffs' reliance on Defendant Wilcox's report earlier in their Complaint does not negate these allegations.

In addition, in their reply brief Defendants argue that "[a]t most, the Complaint alleges that Bowman shouldered his way into Ashely's apartment," but "does not allege that Bowman conducted any search or seizure of Ashley's apartment, much less that Bowman conducted an

unlawful or unreasonable search or seizure in violation of the Fourth Amendment."  (Doc. 34)

at 4.  Defendants improperly raised this argument in a reply brief, preventing Plaintiff from an

opportunity to respond.  Nevertheless, the argument fails because warrantless entry into a

person's home, absent exigent circumstances or consent, can be enough to violate the Fourth

Amendment.  "At the very core of the Fourth Amendment stands the right of a man to retreat

into his own home and there be free from unreasonable governmental intrusion."  *Kyllo v. United*

*States*, 533 U.S. 27, 31 (2001) (citations omitted); *Payton*, 445 U.S. at 590 ("[T]he Fourth

Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances,

that threshold may not reasonably be crossed without a warrant.").  The Tenth Circuit has held

that a "knock and talk" is a consensual encounter that "does not contravene the Fourth

Amendment, even absent reasonable suspicion."  *See United States v. Cruz-Mendez*, 467 F.3d

1260, 1264 (10th Cir. 2006).  Entry, however, is only justified when an officer has a warrant,

obtains consent, or there are other exigencies.  *See id.* at 1265 ("Consent can justify an entry into

a home, regardless of whether there is probable cause. … But consent is valid only if it is 'freely

and voluntarily given.'") (quoting *United States v. Sawyer*, 441 F.3d 890, 894 (10th Cir. 2006)).

Therefore, Plaintiffs' allegation that Defendant Bowman entered Ms. Ashley's apartment without

a warrant, consent, or any apparent exigent circumstances, is enough to plausibly state a claim

for relief.  *See Lane v. Jackson*, 2014 WL 1365141, at *2 (N.D. Okla.) (denying motion to

dismiss because "Plaintiffs' complaint does not mention any exigent circumstances and the

allegations found therein sufficiently plead unlawful entry into the home by virtue of the

allegation that entry was without a warrant or other lawful authority").

     Defendant Bowman also moves to dismiss Plaintiff's claim for punitive damages in

Count 5.  Punitive damages in Section 1983 cases may be awarded only if the challenged

conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Considerations for assessing punitive damages include an evaluation of the nature of the conduct, the wisdom of pecuniary punishment, and the advisability of a deterrent.  *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989); *see also Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003) (explaining that punitive damages serve the function of deterrence and retribution).

Construing the allegations in the Complaint in the light most favorable to Plaintiffs, Defendant Bowman is alleged to have forced his way into Plaintiff Ashley's apartment without a warrant, consent, or any exigencies.  At this stage of the case, the Court cannot find as a matter of law that Defendant Bowman did not engage in reckless or callously indifferent conduct towards Plaintiff Ashley's Fourth Amendment rights or that his alleged actions should not be deterred.  *See Smith v. Dixon*, 2011 WL 13285735, at *6 (D.N.M.) (denying motion for summary judgment on punitive damages claims where "each Defendant should have known that there was no warrant to search the house and seize the firearm and, thus, they could not force Plaintiffs at gunpoint to turn over an item in their home without consent or exigent circumstances"); *Lane*, 2014 WL 1365141, at *3 (denying motion to dismiss plaintiffs' request for punitive damages based on warrantless entry into the plaintiffs' home because the plaintiffs' complaint "alleges a blatant constitutional violation" by the officer).

For the reasons stated above, the Court denies the City Defendants' Motion to Dismiss Count 5.

**C.  Plaintiffs' Equal Protection Claims (Counts 2 and 6)**

The City Defendants next move to dismiss Plaintiffs' equal protections claims, arguing that Defendant Bowman's comment to Plaintiff Ashley is not sufficient to state an equal protection claim and "Plaintiffs have not described how they were otherwise treated differently than non-African-American citizens."  (Doc. 16) at 11.  Plaintiff Harris's equal protection claim states:

> Because Bowman appears to be what any reasonable person would refer to as a 'racist,' and because Bowman knew Harris prior to this Incident and knew that she was an American citizen of black heritage, it appears that this Incident was motivated by racial discrimination and therefore Harris claims that her Fourteenth Amendment rights under the U.S. Constitution which guarantees 'equal protection under the law' was violated as a result of this Incident.

(Doc. 1-5) at 11.  Plaintiff Ashley's equal protection claim states:

> Because Bowman appears to be what any reasonable person would refer to as a 'racist,' it appears that this Second Incident was motivated by racial discrimination and therefore Ashley claims that her Fourteenth Amendment rights under the U.S. Constitution which guarantees 'equal protection under the law' was violated as a result of this Incident.

*Id.* at 14.  Plaintiffs allege in their Complaint that Defendant Bowman said to Plaintiff Ashley "if you bring your black ass out here again, I'm going to arrest you."  *Id.* at 7.  Plaintiffs further state that Gilbert Salguero, an officer who worked with and for Defendant Bowman for about seventeen years, signed an affidavit reciting multiple incidents of Bowman's racism.  *Id.* at 8-9.  Plaintiffs note two incidents in which Officer Salguero claims that Defendant Bowman made racist statements.  *Id.*

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Constitution, Amend. XIV, § 1.  "Equal

protection is essentially a direction that all persons similarly situated should be treated alike."

*Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006); *see*

*also Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal

protection claim, plaintiffs must [show] that they were treated differently from others who were

similarly situated to them."); *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996) (explaining

that it is not necessary to demonstrate that the challenged action was taken solely for

discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a

motivating factor).

Plaintiffs here are members of a protected class and allege mistreatment on the basis of

their race.  Regarding the racist remarks Defendant Bowman is alleged to have made to Plaintiff

Ashley, the Tenth Circuit has made clear that "verbal harassment or abuse … is not sufficient to

state a constitutional deprivation under 42 U.S.C. § 1983."  *Collins v. Cundy*, 603 F.2d 825, 827

(10th Cir. 1979) (citations omitted); *see also Page v. Schnurr*, 2021 WL 3634687, at *3 (D.

Kan.) ("While [the corrections officer's] racist comments to Plaintiff are deplorable and

unprofessional, they do not constitute an Equal Protection violation. … Because Plaintiff

includes no other allegation of racial discrimination beyond racist remarks from one correctional

officer, he does not state a claim under the Equal Protection Clause.") (citations omitted).

Furthermore, in order to sufficiently allege denial of equal protection based on their race,

Plaintiffs must allege facts demonstrating that Defendants acted with a discriminatory intent or

purpose and that they were treated differently than others who were similarly situated to them.

While Plaintiffs present allegations of racism, those allegations are not sufficient to demonstrate

that Defendant Bowman acted with a discriminatory intent or purpose or that Plaintiffs were

treated differently than others.  *See Green v. Corrections Corp. of America*, 401 Fed. Appx. 371,

376 (10th Cir. 2010) ("In order to state a race-based equal protection claim, a plaintiff must

sufficiently allege that the defendant was motivated by racial animus."); *Hunnicutt v.*

*DeSantiago*, 429 F. Supp. 3d 905, 918 (D.N.M. 2019) (dismissing equal protection claim

because "[t]he mistreatment here takes the form of DeSantiago's racist comments; Hunnicutt has

not described how he was otherwise treated differently than non-African-American inmates");

*Davis v. Holder*, 2014 WL 1713429, at \*13 (D. Colo.) (dismissing equal protection claim

because the plaintiff failed to set forth facts demonstrating how other similarly situated

individuals were treated differently, and finding the plaintiff's "speculative allegations" of

racism "are insufficient to demonstrate discriminatory intent"). Therefore, Plaintiffs' equal

protection claims are not enough to raise their right to relief above the speculative level. *See*

*Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above

the speculative level" and a complaint "requires more than labels and conclusions.").

    For these reasons, the Court grants the Motion to Dismiss Plaintiffs' equal protection

claims. The dismissal will be without prejudice because Plaintiffs may be able to amend their

Complaint to add facts necessary to support these claims. *See Boateng v. Metz*, 410 F. Supp. 3d

1180, 1191 (D. Colo. 2019) (dismissing equal protection claim without prejudice "because

Plaintiff may be able to amend his Complaint to add the facts necessary to support this claim").

**D. Municipal Liability**

    Finally, the City of Texico moves to dismiss Plaintiffs' claims against it, arguing that

Plaintiffs fail to allege the City had a custom or policy that led to Plaintiffs' injuries. (Doc. 16)

at 11-13. Under *Monell v. Department of Social Services*, a municipality can be liable under 42

U.S.C. § 1983 for damages only when the entity's "policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

24

the [constitutional] injury."  436 U.S. 658, 694 (1978).  "A plaintiff suing a municipality under

Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee

committed a constitutional violation; and (2) that a municipal policy or custom was the moving

force behind the constitutional deprivation."  *Cavanaugh v. Woods Cross City*, 625 F.3d 661,

667 (10th Cir. 2010) (citation omitted); *see also Monell*, 436 U.S. at 691 ("Congress did not

intend municipalities to be held liable unless action pursuant to official municipal policy of some

nature caused a constitutional tort.").  A municipal policy or custom may be "(1) an officially

promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the

decisions of employees with final policymaking authority; (4) the ratification by final

policymakers of the decisions of their subordinates; or (5) the failure to adequately train or

supervise employees."  *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016)

(citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

    In their Complaint, Plaintiffs note another case where Defendant Bowman was sued and

his motion for qualified immunity was denied.  (Doc. 1-5) at 3 (citing *Maria Esparza v. Douglas

Bowman*, Civ. No. 11-727 WJ/WPL.  Plaintiffs state that "there were apparently multiple

incidents involving Bowman acting in a racially biased manner such that it was virtually

impossible for the City of Texico to not know of Bowman's predilection for this kind of

behavior."  *Id.* at 3.  In response to the Motion to Dismiss, Plaintiffs state that because of

"numerous lawsuits" and complaints against Defendant Bowman, "the City was on notice that

Bowman had a history of lawsuits against him alleging misconduct" and "was on notice that

Bowman was a racist."  (Doc. 27) at 23.  Plaintiffs contend "[t]his notice to the City constituted a

custom, a pattern of behavior that was acceptable to the City."  *Id.*

As discussed above, Plaintiffs fail to state a claim for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs therefore fail to state equal protection claims against the City of Texico because they have not pled facts to show that an employee committed a constitutional violation.  *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").  Regarding Plaintiffs' *Monell* claims for violation of their Fourth Amendment rights, Plaintiffs have stated Fourth Amendment claims against Defendants Bowman and Vannatta, thereby satisfying the first element of a *Monell* claim against the City of Texico.  However, Plaintiffs do not allege that Defendant Bowman's or Defendant Vannatta's actions in entering their homes were the result of a municipal policy or custom, or failure to supervise or train employees.  Instead, Plaintiffs allege the City of Texico had knowledge of allegations racism by Defendant Bowman—Plaintiffs do not claim the City had knowledge of allegations of unlawful entry.  Absent allegations that the City of Texico had a policy or custom "that was the moving force" behind the warrantless entries into Plaintiffs' homes, Plaintiffs fail to state a *Monell* claim against the City of Texico for violation of their Fourth Amendment rights.  Accordingly, the Court dismisses Plaintiffs' *Monell* claims against the City of Texico.  The dismissal will be without prejudice as Plaintiffs may be able to amend their Complaint to add facts necessary to support these claims.

## IV.  Conclusion

Based on the foregoing, the Court grants in part and denies in part the City Defendants' Motion to Dismiss.

IT IS THEREFORE ORDERED that the City Defendants' Motion to Dismiss, (Doc. 16), is GRANTED in part and DENIED in part as follows:

1) The Motion is GRANTED as to Plaintiffs' state law claims (Counts 3, 4, 7, 8, and 9), and Plaintiffs' official capacity claims against Defendants Bowman and Vannatta, and those claims are dismissed with prejudice;

2) The Motion is GRANTED as to Plaintiffs' claims for equal protection (Claims 2 and 6), and Plaintiffs' claims against the City of Texico, and those claims are dismissed without prejudice; and

3) The Motion is DENIED as to Plaintiffs' Fourth Amendment claims against Defendants Bowman and Vannatta (Counts 1 and 5).

IT IS SO ORDERED.

_____
KEVIN R. SWEAZEA
UNITED STAGES MAGISTRATE JUDGE
Presiding by Consent