IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICOLE HARRIS and PAULA ASHLEY,

    Plaintiffs,

v.                                                                                                 Case No. 2:22-cv-454 KRS/GBW

THE CITY OF TEXICO, *a New Mexico incorporated municipality*;
DOUGLAS BOWMAN, *Chief of Police for the City of Texico*;
CHRISTINA VANNATTA, *as Personal Representative of the
Estate of CHARLES BRYAN VANNATTA, deceased,
formerly a police officer with the City of Texico*;
THE BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF CURRY;
SONNY WILCOX, *a deputy sheriff employed
by the County of Curry*; and
BRIAN STOVER, *Chief Deputy District Attorney
for the Ninth Judicial District Attorney*,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Brian Stover's Motion to Dismiss, (Doc. 17), filed July 18, 2022. Plaintiffs filed a response on September 12, 2022, and Defendant Stover filed a reply on October 11, 2022. (Docs. 28 and 31). Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct dispositive proceedings in this matter and to enter a final judgment. (Docs. 7, 10-14). Having considered the parties' briefing, record of the case, and relevant law, the Court grants Defendant Stover's Motion to Dismiss as set forth below.

**I.    Background**

For the purpose of ruling on Defendant Stover's Motion to Dismiss, the Court assumes that the following facts, taken from Plaintiffs' Complaint, are true. *See Mayfield v. Bethards*,

826 F.3d 1252, 1255 (10th Cir. 2016) ("In reviewing a motion to dismiss, [the Court] accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff.").[1] Plaintiffs allege that on January 23, 2020, Plaintiff Harris called 911 and, during that call, her cell phone battery died and the call was disconnected. (Doc. 1-5) at 6 (Plaintiffs' Second Amended Complaint). Plaintiff Harris was calling to report that a witness in a civil matter she was involved in was in her parking lot and Plaintiff Harris was concerned about it. When the call dropped, Plaintiff Harris decided not to pursue the matter further. *Id.*

"About one (1) or two (2) hours" later, Defendant Vannatta went to Plaintiff Harris's apartment and looked into the windows. Plaintiff Ashley, who is Plaintiff Harris's mother, saw Defendant Vannatta looking through the windows of Plaintiff Harris's apartment and "banging on the windows with his flashlight so hard that Ashley could see the windows vibrating and thought they were going to break." *Id.* at 7. Plaintiff Ashley called the Curry County Sheriff's Department and asked for assistance. Defendants Bowman and Wilcox arrived to assist Defendant Vannatta. Defendants Bowman and Vannatta asked Plaintiff Ashley for the key to Plaintiff Harris's apartment and, when Plaintiff Ashley told them she did not have a key, Defendant Bowman "then turned to Vannatta and said to 'kick the fucking door.'" *Id.* Plaintiffs allege that Defendant Vannatta then contacted Chief Deputy District Attorney Stover, "who advised Vannatta to breach Harris' door based on the justification of a 'welfare check.'" *Id.*

Defendant Vannatta breached the door to Plaintiff Harris's apartment and Defendants Vannatta and Bowman entered the apartment with guns drawn. *Id.* at 8. Plaintiff Harris "was

---

[1] The Court only includes facts from the Complaint here that are relevant to Defendant Stover's Motion to Dismiss. A more comprehensive recitation of the facts alleged by Plaintiffs is set forth in the Court's Memorandum Opinion and Order on the City Defendants' Motion to Dismiss, (Doc. 16).

2

asleep in the apartment bedroom," and was charged with "improper use of 911." *Id.* Plaintiff Harris alleges that the charge for improper use of 911 resulted in the revocation of her conditions of release in another case and she was held without bond in the Curry County Detention Center for eight days. *Id.* at 9. Plaintiff Harris now is afraid of the police, and has continuing nightmares and PTSD as a result of this incident. *Id.* at 9-10.

Plaintiff Harris claims that her Fourth Amendment and state constitutional rights to be free from unreasonable searches and seizures were violated "from Stover directing and Bowman and Vannatta breaking into Harris home without a warrant, without consent, and without exigent circumstances or other emergency." *Id.* at 10, 12 (Counts 1 and 3). Plaintiffs bring these claims against Defendant Stover in his individual capacity, and request punitive damages. *Id.* at 2, 10-12. Defendant Stover argues in his Motion to Dismiss that Plaintiffs have failed to state a claim against him upon which relief can be granted. (Doc. 17) at 1. He contends he is entitled to qualified immunity for the federal claim because Plaintiffs have not plausibly alleged that he committed any constitutional violation and that any alleged violation was not clearly established. *Id.* at 5-6. He also argues that Plaintiffs' state law claims are not within any waiver of immunity under the New Mexico Tort Claims Act, and Plaintiffs fail to allege facts meriting punitive damages. *Id.* at 6-8.

Plaintiffs respond that Defendant Stover is not entitled to qualified immunity on the federal claim because entry into Plaintiff Harris's home was not justified by exigent circumstances or any other exception to the prohibition on warrantless entry, and it was clearly established at the time of the incident that the entry was unlawful. (Doc. 28) at 2-16. Plaintiffs further argue that Defendant Stover is not entitled to absolute or prosecutorial immunity because, "when he ordered Bowman and Vannatta to breach Harris' door and enter on a 'welfare check'

[he] was acting as an investigator, as a police supervisor, and not as an advocate in a quasi-judicial setting." *Id.* at 23. Plaintiffs concede their state law claim and claim for punitive damages against Defendant Stover. *Id.* at 24. Because Plaintiffs concede these claims, the Court dismisses Count 3 and Plaintiffs' punitive damages claim against Defendant Stover with prejudice.

In his reply brief, Defendant Stover maintains that Plaintiffs fail to state a plausible claim for relief against him. (Doc. 31) at 1-2. He explains he has not asserted that the entry into Plaintiff Harris's home was constitutional, rather he "simply argued that the factual allegations Plaintiffs stated *against him* were not legally sufficient." *Id.* at 2. He further states that Plaintiffs' prosecutorial immunity argument is irrelevant as he has not relied on absolute or prosecutorial immunity. *Id.* at 3.

## II.  Legal Standard

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Additionally, the court must view a plaintiff's allegations in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013)

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield*, 826 F.3d at 1255. The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556. Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct," otherwise, the plaintiff has not shown entitlement to relief. *Id.* at 679.

**B. Qualified Immunity**

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is available to state officials sued in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). When an individual defendant raises the qualified immunity defense, the burden shifts to the plaintiff to meet a strict two-part test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must show that: (1) the official violated a constitutional or statutory right, and (2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). A court may address these prongs in either order, but a

5

plaintiff must satisfy both to avoid qualified immunity. *Pearson*, 555 U.S. at 236; Olsen, 312 F.3d at 1304.

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [the Court] will also review this defense on a motion to dismiss." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (citations omitted). Accordingly, "[a]t the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citations omitted). The complaint need not include "all the factual allegations necessary to sustain a conclusion that [a] defendant violated clearly established law." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citation omitted). Instead, the operative question is whether the plaintiff has "ple[d] factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights." *Iqbal*, 556 U.S. at 666.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Moore*, 438 F.3d at 1042 (citation omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an official acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct.

577, 591 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015).  While the plaintiff "does not need to find a case with an identical factual situation," the correspondence between settled law and the present case must be "substantial."  *Moore*, 438 F.3d at 1042; *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (explaining that if no controlling authority is on point, the plaintiff must identify "a robust consensus of cases of persuasive authority") (citation omitted).  In other words, the action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law.  *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).  Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law."  *Id.* at 1069-70 (citation omitted).

### III.  Analysis

Plaintiff Harris claims her Fourth Amendment right to be free from unreasonable searches and seizures was violated by Defendant Stover when he directed Defendant Vannatta to break into her home without a warrant, consent, exigent circumstances, or other emergency.  (Doc. 1-5) at 10.  Defendant Stover argues he is entitled to qualified immunity for this claim because Plaintiffs have not plausibly alleged that Defendant Stover committed a constitutional violation and have not shown that any constitutional violation was clearly established.  (Doc. 17) at 5-6.  In a separate order on Defendant Bowman's and Defendant Vannatta's Motion to Dismiss, (Doc. 16), the Court found that Plaintiffs sufficiently stated a claim for violation of Plaintiff Harris's Fourth Amendment rights based on the officers' entry into her home.  (Doc. 38).  Nevertheless, in order to state a claim for relief against Defendant Stover, Plaintiffs must make clear how Defendant Stover's actions were unlawful—that is, whether Defendant Stover violated Plaintiff Harris's Fourth Amendment rights by advising Defendant Vannatta to

7

breach the apartment.  *See Robbins v. Okla. ex rel. Dep't of Human Svcs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (to state a claim for relief, a plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her").

       The Tenth Circuit has explained that a district attorney may be liable for an officer's conduct that resulted in a constitutional deprivation "if plaintiff shows an 'affirmative link' between [the district attorney's] conduct and the constitutional deprivation."  *Reid v. Wren*, 1995 WL 339401, *2 (10th Cir. 1995) (unpublished table case).  In *Reid*, law enforcement officers sought the district attorney's advice about taking a horse from the plaintiff's property that the plaintiff had allegedly stolen.  The officers testified that the district attorney advised them to tell the plaintiff he could be arrested for concealing stolen property if he refused to relinquish the horse.  The Tenth Circuit affirmed the district court's decision denying qualified immunity for the district attorney, stating that the officers' testimony about the district attorney's advice "is more than ample to establish a potential 'affirmative link' between [the district attorney] and the constitutional deprivation."  *Id.*  For this ruling, the Tenth Circuit relied on *Snell v. Tunnell*, in which the Tenth Circuit held that "Plaintiffs must show that a supervisory defendant, expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation."  920 F.2d 673, 700 (10th Cir. 1990).

       Defendant Stover argues that his advice to Defendant Vannatta was not instrumental in the constitutional deprivation because Defendant Bowman had already directed Defendant Vannatta to kick the door prior to Defendant Vannatta contacting Defendant Stover.  (Doc. 17) at 5.  In addition, Defendant Stover notes that Plaintiffs allege that Defendants Bowman and Vannatta "conspired" to deprive Plaintiff Harris of her constitutional rights, but do not allege that

8

Defendant Stover was party to any conspiracy. *Id.* at 5-6.  Defendant Stover also asserts that "Plaintiffs say nothing about any information provided to Mr. Stover by Defendants Bowman and Vannatta when they supposedly contacted Stover about breaching Harris' door." *Id.* at 6.

Plaintiffs respond that Defendant Stover violated Plaintiff Harris's constitutional rights "by extension" of Defendant Bowman's and Defendant Vannatta's actions.  (Doc. 28) at 7 ("Did Bowman and Vannatta (and by extension, Stover) violate Harris' constitutional rights?  (Yes)."). Plaintiffs argue that "Stover, in telling the officer to breach the door on a 'welfare check' was neither 'objectively reasonable' according to *McInerney* and *Najar* nor was the 'manner and scope of search,' in other words, breaking down Harris' door, reasonable." *Id.* at 12 (citing *United States. v. McInerny*, 792 F.3d 1224 (10th Cir. 2015), and *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006)).  Neither of these cases, however, involve a district attorney providing advice to law enforcement officers.  Therefore, while *McInerny* and *Najar* are instructive as to whether the officers' actions were unlawful, the Court cannot rely on them to determine the lawfulness of Defendant Stover's actions.

In addition, Plaintiffs contend that Defendant Stover is not entitled to absolute immunity because he was not acting in his quasi-judicial role as a prosecutor when he advised Defendant Vannatta. *Id.* at 16-23.  Plaintiffs rely on several cases explaining that a prosecutor is entitled to absolute immunity when acting as an advocate or judicial officer, but is only entitled to qualified immunity when acting as an investigator or supervisor. *Id.*  Plaintiffs are correct that Defendant Stover is not entitled to absolute or prosecutorial immunity for his actions in advising the officers about entering Plaintiff Harris's home.  *See Reid*, 1995 WL 339401, *2 ("Although prosecutors often receive absolute immunity from section 1983 claims, they are entitled to invoke qualified immunity only for advice given to police officers.") (citing *Imbler v. Pachtman*, 424 U.S. 409,

9

425 (1976), and *Burns v. Reed*, 500 U.S. 478, 495-96 (1991)).  However, Defendant Stover does not assert absolute or prosecutorial immunity, so the cases Plaintiffs identify regarding when a prosecutor may be entitled to absolute immunity versus qualified immunity are inapposite.  *See* (Doc. 28) at 16-23 (citing *Imbler*, 424 U.S. 409 (prosecutors enjoy absolute immunity "in initiating a prosecution and in presenting the state's case"); *Burns*, 500 U.S. 478 (prosecutor not entitled to absolute immunity for giving legal advice to police); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (prosecutor not entitled to absolute immunity for fabricating false evidence and making false statements at a press conference); *Kalina v. Fletcher*, 522 U.S. 118 (1997) (prosecutor not entitled to absolute immunity for making false statements of fact in an affidavit supporting an application for an arrest); *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) (prosecutor not entitled to absolute immunity for participating in search of jewelry store that was later held to be unconstitutional)).

In response to Defendant Stover's assertion of qualified immunity, Plaintiffs bear the burden of establishing that Defendant Stover violated a constitutional or statutory right that was clearly established when the violation occurred.  Importantly, Plaintiffs do not allege in their Complaint that Defendant Stover had any supervisory authority over Defendants Vannatta or Bowman, or that as a supervisor Defendant Stover "authorized, supervised, or participated in conduct which caused the constitutional deprivation." *Snell*, 920 F.2d at 700.  Even if Plaintiffs' bare allegation that Defendant Stover "directed" the officers to breach the door is sufficient to establish that he violated Plaintiff Harris's Fourth Amendment rights, Plaintiffs fail to identify "a controlling case or robust consensus of cases" where an official acting "under similar circumstances" to those faced by Defendant Stover was found to have acted unlawfully. *Quinn*, 780 F.3d at 1013.  Plaintiffs identify two cases that considered whether a prosecutor was entitled

to qualified immunity. First, in *Truman v. Orem City*, the Tenth Circuit denied the prosecutor qualified immunity where the prosecutor was alleged to have fabricated evidence against the plaintiff and used that evidence in a murder trial. 1 F.4th 1227 (10th Cir. 2021). These facts are substantially different from the facts of this case. Second, in *Stricker v. Township of Cambridge*, the Sixth Circuit granted the prosecutor qualified immunity where the prosecutor advised law enforcement officers to break into the plaintiff's home, finding there were sufficient exigent circumstances to justify the entry. 710 F.3d 350 (6th Cir. 2013). While the facts of *Stricker* are closer to the facts presented here, it is not controlling authority. Therefore, the Court finds that these cases do not constitute "controlling on point authority" or "clearly established weight of authority from other courts." *Beedle*, 422 F.3d at 1069. In addition, the Tenth Circuit's decision in *Reid v. Wren*, denying qualified immunity for the district attorney for his advice to law enforcement officers, cannot constitute clearly established law for Defendant Stover's actions because it is a single unpublished decision. *See Williams v. Hanson*, 5 F.4th 1129, 1132 (10th Cir. 2021) (holding "that a single unpublished opinion cannot establish qualified immunity"); *Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."); and *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, … even if the facts were closer, provides little support for the notion that the law is clearly established.").

For the reasons stated above, the Court holds that Plaintiffs have not established that Defendant Stover violated clearly established law in advising Defendant Vannatta about entering Plaintiff Harris's home and grants Defendant Stover's Motion to Dismiss as to this claim. Because Plaintiffs may be able to amend their Complaint to add facts necessary to support their federal claim against Defendant Stover, the dismissal will be without prejudice. *See Boateng v.*

*Metz*, 410 F. Supp. 3d 1180, 1191 (D. Colo. 2019) (dismissing claim without prejudice "because Plaintiff may be able to amend his Complaint to add the facts necessary to support this claim").

### IV.     Conclusion

Based on the foregoing, the Court grants Defendant Stover's Motion to Dismiss. Because Plaintiffs conceded Count 3 and their punitive damages claim against Defendant Stover, those claims are dismissed with prejudice. Count 1 is dismissed without prejudice for the reasons stated above.

IT IS THEREFORE ORDERED that Defendant Stover's Motion to Dismiss, (Doc. 17), is GRANTED and Plaintiffs' claims against him are dismissed.

IT IS SO ORDERED.

_____
KEVIN R. SWEAZEA
UNITED STAGES MAGISTRATE JUDGE
Presiding by Consent